**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2023 MSPB 20**

Docket No. CB-7521-17-0023-T-1

**Social Security Administration,**

**Petitioner,**

**v.**

**Michael L. Levinson,**

**Respondent.**

July 12, 2023

Aminah M. Collick, Esquire, Atlanta, Georgia, for the petitioner.

David B. Myers, New York, New York, for the petitioner.

Harvey Linder, Esquire, Atlanta, Georgia, for the respondent.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**OPINION AND ORDER**

¶1　　Both parties have filed petitions for review of the initial decision, which found good cause to suspend the respondent for 2 years and downgrade him to a lower-level position. For the reasons discussed below, we DENY the respondent's petition for review, GRANT the petitioner's petition for review, in part, and AFFIRM the initial decision AS MODIFIED by this Opinion and Order to authorize the petitioner to remove the respondent.

BACKGROUND

¶2      The petitioner appointed the respondent to the position of Administrative Law Judge (ALJ) for the petitioner's Office of Disability Adjudication and Review (ODAR) in 2004.  Initial Appeal File (IAF), Tab 1 at 6, Tab 120 at 4, Tab 122, Initial Decision (ID) at 2.  The respondent adjudicates applicants' appeals regarding requests for Social Security benefits.  IAF, Tab 1 at 5-7, Tab 9 at 7.  The respondent began his tenure with the petitioner in the Macon, Georgia hearing office, transferred to the Birmingham, Alabama hearing office, and eventually returned to the Macon hearing office.  IAF, Tab 1 at 6; ID at 2.  The Hearing Office Chief Administrative Law Judges (HOCALJs) at both offices were involved in the instant matter.  IAF, Tab 1 at 6; ID at 2.

¶3      On June 28, 2017, the petitioner's representative, the Chief Administrative Law Judge (CALJ) for ODAR, signed a complaint seeking from the Board its determination that good cause existed for petitioner's intent to (1) suspend the respondent from the date of the complaint through the date of the Board's final decision and (2) remove the respondent from service.  IAF, Tab 1.  Before turning to the petitioner's charges, we recount some of the background alleged in the petitioner's complaint.

¶4      In late 2014, the Birmingham HOCALJ directed the respondent to stop circumventing staff and engaging in off-the-record contact with expert witnesses to determine their availability for hearings.  IAF, Tab 1 at 8-9, 17-19.  This written directive warned the respondent that failure to comply could result in discipline.  *Id.*  The petitioner explained that the respondent could have experts testify during an individual's disability hearing but that other staff had the responsibility of scheduling from a roster of experts on a rotational basis.  IAF, Tab 1 at 17-18.

¶5      In late 2015, the petitioner conducted a focused quality review of a sampling of the respondent's decisions.  In doing so, the petitioner identified the respondent's noncompliance with requirements in several policy areas.  *Id.* at 9,

20. Consequently, the Macon HOCALJ met with the respondent in early 2016 to present a self-guided training curriculum. *Id.* The respondent indicated that he had completed this month-long training on May 25, 2016. *Id.* at 9, 20. On June 28, 2016, the Macon HOCALJ directed the respondent to issue policy-compliant decisions going forward. *Id.* at 9, 20-24. This written directive also warned the respondent that failure to comply with the HOCALJ's directives could result in discipline. *Id.*

¶6 In the second half of 2016, the respondent repeatedly refused or otherwise failed to heed the Macon HOCALJ's repeated instructions to attend sensitivity training. *Id.* at 10. This led to a reprimand, followed by a written directive warning the respondent that failure to attend the training could result in further discipline. *Id.* at 10, 26.

¶7 Between this period and the beginning of 2017, the petitioner asserts that the respondent repeatedly lashed out at the Macon HOCALJ. *Id.* at 11-12. For example, the petitioner alleges that, over 3 different days, the respondent called the Macon HOCALJ a "Nazi," a "liar," and "the worst." *Id.* at 11. The petitioner alleges that, on another date, the respondent walked away as the Macon HOCALJ attempted to give him a verbal directive. *Id.* at 11-12. The petitioner also contends that, on yet another day, the respondent blocked a door to physically prevent the Macon HOCALJ from handing him a written directive before ultimately ripping up the document in front of her and an expert witness. *Id.* at 12.

¶8 On June 28, 2017, the petitioner filed the complaint at issue in this case. *Id.* at 4, 15. It charged the respondent with (1) neglect of duties; (2) failure to follow a directive; and (3) conduct unbecoming an ALJ. *Id.* at 12-15. The neglect of duty charge alleged that the respondent continued to hold hearings and issue decisions that failed to meet certain delineated obligations after completing the month-long training about those issues. *Id.* at 12-13. The failure to follow a directive charge alleged that the respondent failed to follow the directives

regarding the contact with expert witnesses, compliance with obligations surrounding the issuance of decisions, and attendance at sensitivity training. *Id.* at 13-14. The conduct unbecoming charge cited numerous instances when the respondent lashed out at the Macon HOCALJ. *Id.* at 14-15.

¶9 The ALJ assigned to adjudicate this case held a hearing over 14 intermittent days between August 2018 and November 2019. He then issued the initial decision that is before us on review. The ALJ first found that the petitioner proved each of its charges. ID at 10-21. Next, he denied the respondent's affirmative defenses and other challenges. ID at 22-39. Among other things, this included the respondent's claim of discrimination based on age and religion, ID at 24-30, his claim of reprisal for engaging in equal employment opportunity (EEO) activity, ID at 30-32, his request for dismissal based on an alleged discovery violation, ID at 32, and the respondent's challenge to the constitutionality of the petitioner's complaint, ID at 33-39. Lastly, the ALJ found that there was good cause to discipline the respondent but that the appropriate penalty was a 2-year suspension and downgrade, not the suspension and removal requested by the petitioner. ID at 39-48.

¶10 The respondent has filed a petition for review, to which the petitioner has responded, and the respondent has replied. Petition for Review (PFR) File, Tabs 11, 14, 17. The petitioner has also filed a petition for review, to which the respondent has responded, and the petitioner has replied.[1] PFR File, Tabs 12, 15-16. In short, the respondent argues that the ALJ erred by approving any

---

[1] The Board typically construes competing pleadings in which each party objects to the initial decision as a petition for review and cross petition for review. *See* 5 C.F.R. § 1201.114(a) (describing the pleadings allowed on review). However, because the parties filed their petitions for review on the same date, the Office of the Clerk of the Board acknowledged both as petitions for review. PFR File, Tab 13. This decision will as well.

discipline, while the petitioner argues that the ALJ erred by approving a lesser penalty than requested.[2]

## ANALYSIS

The presiding ALJ properly determined that the petitioner proved its charges.

¶11 The ALJ found that the petitioner proved each of its charges: (1) neglect of duty, ID at 10-11; (2) failure to follow directives, ID at 11-16; and (3) conduct unbecoming an ALJ, ID at 16-21. On review, the respondent only disagrees that the petitioner proved the second and third charges.[3] PFR File, Tab 11 at 16-20, 26-27. Our decision will be similarly focused. *See Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶ 5 (2009) (declining to revisit an ALJ's decision to sustain certain charges when the respondent's petition did not contest those findings on review), *aff'd per curiam*, 383 F. App'x 939 (Fed. Cir. 2010). For the reasons that follow, we discern no basis for reaching a conclusion different than that of the ALJ about the petitioner's proof of its charges.

---

[2] The petitioner also argues that we should deny the respondent's petition for review and strike his response to the petitioner's petition for review because both exceed the Board's word limit for such pleadings. PFR File, Tab 14 at 5-6 (referencing PFR File, Tab 11 at 5-34), Tab 16 at 5 (referencing PFR File, Tab 15 at 4-33); *see* 5 C.F.R. § 1201.114(h). At the same time, the respondent argues that we should dismiss the petitioner's response to his petition because the petitioner mailed that response to the respondent's former address before sending it to his new address 4 days later. PFR File, Tab 17 at 8-9 (referencing PFR File, Tab 14). Regarding the respondent's alleged error, we need not reach this issue because we deny his petition for review on the merits. Regarding the petitioner's alleged error, it was quickly remedied, and the petitioner properly and timely served the respondent's attorney. PFR File, Tab 14 at 19. We find that the circumstances do not warrant dismissal of the petitioner's response. *See Costin v. Department of Health and Human Services*, 64 M.S.P.R. 517, 523 (1994) (declining to dismiss an agency's petition for review when the agency did not properly serve the appellant until 3 days later, but this belated service did not prejudice the appellant), *vacated on other grounds by* 72 M.S.P.R. 525 (1996), *modified by* 75 M.S.P.R. 242 (1997).

[3] We discern no basis to disturb the ALJ's determination that the petitioner proved the charge of neglect of duties. ID at 10-11.

*Failure to Follow Directives*

¶12      Regarding the failure to follow directives charge, we note that ALJs may be disciplined for failing to follow directives unrelated to their decisional independence. *See, e.g.*, *Abrams v. Social Security Administration*, 703 F.3d 538, 545-46 (Fed. Cir. 2012); *Social Security Administration v. Burris*, 39 M.S.P.R. 51, 55-57 (1988), *aff'd per curiam*, 878 F.2d 1445 (Fed. Cir. 1989) (Table).  The ALJ found that the respondent failed to follow directives as alleged by the petitioner and that these directives did not interfere with the respondent's decisional independence.  ID at 11-16.  The respondent does not dispute these particular findings, and we decline to disturb them.  He also does not dispute the presiding ALJ's finding that the petitioner proved its specification that he failed to follow a directive when he continued to issue decisions that did not comply with the Macon HOCALJ's June 28, 2016 directive to issue legally sufficient decisions.  ID at 13-15; IAF, Tab 106 at 7-10.  We discern no basis to disturb this finding.

¶13      The respondent argues, however, that the remaining two directives underlying the charge were, despite the ALJ's findings to the contrary, improper for reasons other than his decisional independence.  PFR File, Tab 1 at 16-20; ID at 11-13, 15-16.  The first of these directives was to cease directly contacting potential expert witnesses to determine their ability to testify.  IAF, Tab 1 at 13, Tab 104 at 15-17.  The second was the directive to attend sensitivity training on a specified date, which followed several prior directives to the respondent by the petitioner to attend this training.  IAF, Tab 1 at 14, Tab 108 at 4.

¶14      To enable agencies to effectively manage the workplace, the Board has long held that an employee is required to comply with an agency order, even when he may have substantial reason to question it, while taking steps to challenge its validity through whatever channels are appropriate.  *Pedeleose v. Department of Defense*, 110 M.S.P.R. 508, ¶ 16, *aff'd per curiam*, 343 F. App'x. 605 (Fed. Cir. 2009).  Put another way, an employee is expected to comply with a lawful order

and grieve the propriety of that order later. *E.g.*, *Dias v. Department of Veterans Affairs*, 102 M.S.P.R. 53, ¶ 14 (2006), *aff'd per curiam*, 223 F. App'x. 986 (Fed. Cir. 2007); *Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 407-08, *aff'd*, 73 F.3d 380 (Fed. Cir. 1995) (Table). Recognized exceptions apply in extreme or unusual circumstances, such as ones involving orders that would require an individual to violate a law, rule, or regulation, or orders that would place an employee in a dangerous situation or cause irreparable harm. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶¶ 11-12; *Pedeleose*, 110 M.S.P.R. 508, ¶¶ 8, 17-18. Here, we find no basis for concluding that the directives the respondent ignored constituted such extreme or unusual circumstances.

¶15      According to the respondent, the directive about limiting his contact with expert witnesses outside of hearings was not proper because it was a nefarious attempt to line the pockets of his HOCALJ's son, who was an attorney that routinely handled disability cases.[4] PFR File, Tab 11 at 16-18. The presiding ALJ considered this argument but concluded that "the record does not establish that [the HOCALJ] was taking part in any improper scheme." ID at 12. On review, the respondent still has not presented any supportive evidence, nor has he explained how limiting his contact with expert witnesses outside of hearings would aid anyone's financial interests.

¶16      The respondent's arguments inaccurately described the contents and nature of the aforementioned directive. While the respondent asserts that the HOCALJ

---

[4] The petitioner argues that this and many other arguments within a large portion of the respondent's petition are lacking in terms of references to the record or applicable law, so these portions should be stricken. PFR File, Tab 14 at 6-7 (referencing PFR File, Tab 11 at 16-34). The Board's regulations require that a petition for review be supported by references to applicable laws or regulations and by specific references to the record. 5 C.F.R. § 1201.114(b). Statements of a party's representative in a pleading, such as those here, do not constitute evidence. *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995). We will not strike any portion of the respondent's petition, but we will note where the respondent has made cursory or otherwise unsupported arguments and analyze those arguments accordingly.

directed him to give the HOCALJ full authority to choose the respondent's experts, the directive says nothing of the sort. It instead recognizes that, pursuant to the petitioner's Hearings, Appeals, and Litigation Law Manual (HALLEX), the respondent and other judges, presumably including the HOCALJ, should "avoid any off-the-record discussions with expert witnesses." IAF, Tab 104 at 15-16. The directive then describes how the petitioner has nonadjudicative staff responsible for scheduling any expert a judge may need and how those schedulers will select individual experts on a rotational basis. *Id.*

¶17 The respondent also argues that the directive about expert witnesses improperly relied on the HALLEX. PFR File, Tab 11 at 17. He references the HALLEX provisions cited in the petitioner's directive, sections I-2-5-36 and I-2-5-38. *Id.* (referencing IAF, Tab 104 at 15-21). We are not persuaded. Without more, the respondent's reliance on unspecified "cross examination" hearing testimony does not establish any error on the part of the petitioner or the presiding ALJ as to the directive. The HALLEX provisions the respondent has referenced unambiguously contemplate the ALJ's role as one where he requests a particular type of expert while other staff then selects a specific individual expert based on the type requested, experts' availability, and a requirement that experts be selected on a rotational basis. *E.g.*, IAF, Tab 104 at 18, 20. Even if the HALLEX provisions do not explicitly preclude the respondent from directly contacting expert witnesses, the respondent has presented no basis for us to conclude that the petitioner was bound by HALLEX and was unable to impose further requirements on the respondent. *See Abrams*, 703 F.3d at 540-43, 546 (affirming the Board's finding of good cause to authorize the removal of an ALJ for his failure to follow multiple directives to process cases that had been lingering or justify his inability to do so); *Social Security Administration v. Anyel*, 58 M.S.P.R. 261, 269 n.13 (1993) (finding that ALJs are required to follow agency policies) (citing *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989) (a Social Security Administration (SSA) "ALJ is a creature of statute and, as such, is

subordinate to the [petitioner head] in matters of policy and interpretation of law")); *see also Brennan v. Department of Health and Human Services*, [787 F.2d 1559](), 1562 (Fed. Cir. 1986) (finding that decisional independence does not prohibit "appropriate administrative supervision that is required in the course of general office management").

¶18    Turning to the directive to attend sensitivity training, the respondent argues that it was improper because the training was not needed or warranted. PFR File, Tab 11 at 18-20. He asserts that this directive stemmed from a complaint by a claimant's attorney that had no merit. *Id.* at 18-19. But the merits of this complaint or lack thereof are not particularly relevant. The respondent has failed to point us to anything that precluded the petitioner from deciding that he should attend sensitivity training and directing him to do so.

¶19    The ALJ specifically found that the directives the respondent challenges on review were, in fact, proper. ID at 11-13, 15-16. The respondent's conclusory or otherwise unsupported arguments do not persuade us otherwise, nor do they establish that the directives at issue were ones he could unilaterally ignore, rather than obey now and grieve later.

*Conduct Unbecoming an ALJ*

¶20    ALJs may be disciplined for conduct unbecoming. *See, e.g.*, *Social Security Administration v. Long*, [113 M.S.P.R. 190](), ¶ 46 (2010), *aff'd*, [635 F.3d 526]() (Fed. Cir. 2011). Such conduct is that "which was improper, unsuitable, or detracting from one's character or reputation." *Id.*, ¶ 42.

¶21    Here, the petitioner included 10 specifications underlying its conduct unbecoming charge, all of which concerned the respondent's outbursts over the course of 5 days between August 2016 and January 2017. IAF, Tab 1 at 14-15. Among other things, this included the respondent calling his HOCALJ a "Nazi." *Id.*

¶22    On review, the respondent does not dispute that he engaged in the alleged conduct. He instead asserts that the HOCALJ instigated each of his outbursts.

PFR File, Tab 11 at 26-27. But the respondent's argument is a cursory one, unsupported by any references to evidence of record. He also points out that the 10 specifications concerned 5 incidents. *Id.* Neither of these arguments persuades us that the ALJ erred in sustaining the petitioner's conduct unbecoming charge. If anything, they are better suited to our penalty analysis. *See, e.g.*, *Long*, 113 M.S.P.R. 190, ¶ 51 (considering a respondent's claim of provocation as part of the Board's penalty analysis); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (recognizing factors that may be relevant to a penalty determination, such as provocation on the part of others involved in the matter).

¶23    In sum, the respondent has not provided a basis to disturb the ALJ's determination that the petitioner proved all three of its charges.

The respondent failed to prove his claims of age discrimination, discrimination based on religion, or EEO reprisal.

¶24    In the initial decision, the ALJ separately addressed claims that the petitioner subjected the respondent to disparate treatment by placing him on administrative leave from January to March 2017, ID at 25-27, that the petitioner's investigation of respondent that began in January 2017 was tainted by discrimination based on age and religion, ID at 27-28, and that the petitioner subjected the respondent to age- or religion-based discrimination in the form of a hostile work environment, ID at 28-30. Lastly, the ALJ considered a claim that the petitioner filed the complaint before us in retaliation for the respondent's EEO activity. ID at 30-32. The ALJ found that the respondent failed to meet his burden concerning each claim. ID at 25-32.

¶25    On review, the respondent reasserts that the petitioner created a hostile work environment and retaliated against him for filing EEO complaints by placing him on administrative leave and investigating an alleged complaint about the respondent harassing another employee, which was ultimately not substantiated. PFR File, Tab 11 at 20-23, 25-26. He also argues that the

petitioner subjected him to a hostile work environment and discrimination based on age and religion. *Id.* at 27-32.

¶26    The respondent's arguments regarding discrimination and EEO reprisal contain limited references to the record, such that the arguments primarily rely on conclusory assertions. PFR File, Tab 11 at 20-23, 25-32. For example, the respondent describes the petitioner as engaging in "blind *desperation*" and an "all-out war" by placing the respondent on administrative leave for the period between his repeated lashing out at his HOCALJ, e.g., calling her a "Nazi," and the petitioner's filing of the complaint before us. PFR File, Tab 11 at 20-21 (emphasis in original). According to the respondent's petition for review, while the respondent was on administrative leave, the petitioner investigated him without "due process or fairness," which was "discriminatory, retaliatory, and harassing." *Id.* at 21. The petition for review also asserts that discrimination and reprisal are further evidenced by the fact that the petitioner ultimately concluded that some allegations were not substantiated after it investigated the respondent's alleged misconduct. *Id.* at 21-23 (referencing IAF, Tab 116 at 30-31, Tab 117 at 5-6).

¶27    We find that, taken together, the respondent's allegations do not prove that discrimination or retaliation was a motivating factor in the petitioner's actions. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-21, 30 (holding that, to prove discrimination based on age or religion or to prove retaliation for protected EEO activity in a Board appeal under 5 U.S.C. § 7701, an employee must prove at least that discrimination or retaliation was a motivating factor in the contested action). Most of the respondent's misconduct occurred in the latter half of 2016 and early 2017, culminating with his outbursts on December 13, 2016, January 9, 2017, and then January 11, 2017, at which point the petitioner took just days to place the respondent on administrative leave before filing the complaint before us. IAF, Tab 1 at 11-12, Tab 116 at 27. Under

the circumstances, we do not find that the petitioner's timely response to the respondent's misconduct was motivated by discrimination or retaliation.

¶28    We further note that the respondent's petition for review contains only one reference to age and religion and one associated reference to the record. PFR File, Tab 11 at 28. That reference to the record directs us to the hearing testimony of the respondent's union representative, who was also an agency ALJ, stating that the petitioner "seem[ed] to be going after" the respondent and that this "could have been" because of the respondent's age or religion. *Id.* (referencing Hearing Transcript (HT), May 8, 2019, at 313-14 (testimony of the respondent's peer)). However, that testimony is not persuasive evidence that age or religion was a motivating factor in the petitioner's request to suspend and remove the respondent. The Board has held that an individual's speculations about a petitioner's motives are not probative of the petitioner's motive. *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 9 (2012).

¶29    Specific to his claim of EEO reprisal, the respondent alleges that he spoke to an EEO counselor in the summer of 2016, he filed a complaint with the petitioner's General Counsel in September 2016, and he then filed a formal EEO complaint in April 2017. PFR File, Tab 11 at 25-26. But again, the respondent's petition for review has pointed us to no evidence that any of this activity was a motivating factor in the petitioner's request to suspend and remove him. The same is true of his closing brief below. IAF, Tab 120 at 24-25. The ALJ concluded that the official responsible for the matter before us had no knowledge of the respondent's EEO complaint. ID at 31 (citing, e.g., HT, May 7, 2019, at 123-25, 211-15 (testimony of the CALJ)). The respondent has not given us any reason to find otherwise, nor has he presented any other substantive argument or evidence about EEO activity being a motivating factor in the complaint before us.

¶30    Accordingly, we find that the respondent did not prove that discrimination based on his religion or age, or retaliation for his prior EEO activity, was a

motivating factor in the petitioner subjecting him to an allegedly hostile work environment or filing the instant complaint.

The respondent failed to prove his claim of a Constitutional violation.

¶31    For the respondent's Constitutional challenge to the complaint before us, the ALJ first found that SSA ALJs, like the respondent, are inferior officers. ID at 35. However, he further found that the Constitutional limits on who may appoint inferior officers did not prevent Congress from enacting the statutory scheme in place for their removal. ID at 35-37. Finally, the ALJ found that the then-Acting Commissioner had the statutory authority to delegate to the CALJ the authority to sign the instant complaint and that she presumptively did so. ID at 37-39.

¶32    On review, the respondent reasserts his Constitutional claim. PFR File, Tab 11 at 6-16 (citing, e.g., *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018)). He argues that, when the petitioner placed him on administrative leave and issued its complaint seeking to remove him, neither the CALJ that signed it nor the Acting Commissioner who delegated the authority to take these actions to the CALJ was properly appointed. *Id.* at 6-13. Consequently, there was no one within the petitioner's reporting structure that had the authority to remove him from his position. *Id.* The respondent also suggests that the reporting structure at the petitioner agency is altogether improper because the CALJ reported to the Deputy Commissioner for Hearings and Operations, who is not an officer. *Id.* at 6-10. Because, for the reasons stated below, no actual removal has yet taken place, this argument has no bearing on the matter before us, i.e., the petitioner's complaint seeking our good cause determination.

¶33    The petitioner argues that the Acting Commissioner was properly appointed, the Acting Commissioner properly appointed the CALJ and delegated authority to

him, and the CALJ properly exercised that authority to bring this matter before the Board.[5]  PFR File, Tab 14 at 7-11.  As described below, we find the respondent's Constitutional challenge unavailing for reasons different than that described in the initial decision, and we modify the initial decision accordingly.

¶34        In the June 2018 *Lucia* decision, the Supreme Court held that Securities and Exchange Commission (SEC) ALJs are inferior officers subject to the Appointments Clause.  138 S. Ct. at 2049, 2052-55.  Because SEC ALJs were appointed by SEC staff members, rather than the Commission itself, the Court held that the appointment of those ALJs violated the Appointments Clause.  *Id.* at 2050-51, 2053-55.  The Court further held that because the petitioner had made a timely challenge to the Constitutional validity of the appointment of the ALJ who adjudicated the SEC's claim that he misled investors, he was entitled to relief in the form of a new hearing before a different, properly appointed official.  *Id.* at 2049-50, 2055.

¶35        Soon after *Lucia*, the President issued an executive order which provided that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause."  Exec. Order No. 13,843, 83 Fed. Reg. 32755 (July 10, 2018).  Around that same time, the petitioner's Acting Commissioner ratified the appointments of the petitioner's ALJs to address any associated Appointments Clause questions.  *See Cody v. Kijakazi*, 48 F.4th 956, 959 (9th Cir. 2022) (citing Social Security Ruling 19-1p, 84 Fed. Reg. 9582-02, 9583 (Mar. 15, 2019)); Social Security Emergency Message 18003 REV 2, § B (Aug. 6, 2018), https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM (last visited July 12, 2023).

---

[5] As both parties have acknowledged, two different individuals held the Acting Commissioner position during the relevant period.  One held the position at the time of the CALJ's appointment, while another held the position when the CALJ signed the complaint before us.  *E.g.*, PFR File, Tab 11 at 12, Tab 14 at 8.

¶36    In cases that followed, including this one, the petitioner did not contest arguments that SSA ALJs are inferior officers who were not properly appointed before the petitioner's post-*Lucia* ratification of its ALJs.  PFR File, Tab 14 at 7 n.4, 9-11; *e.g.*, *Ramsey v. Commissioner of Social Security*, 973 F.3d 537, 547 (6th Cir. 2020).  The ALJ presiding over this case also found that the respondent, as an SSA ALJ, is an inferior officer.  ID at 34-35.  However, we find it unnecessary to decide that question.

¶37    The statute governing this case provides that a removal "may be taken against an [ALJ] . . . by the [petitioner] in which the [ALJ] is employed only for good cause established and determined by the [Board]."  5 U.S.C. § 7521(a), (b)(1); *see* 5 C.F.R. § 930.211 (reflecting the same proposition).  A Board decision finding good cause "on a proposed [petitioner] action . . . against an [ALJ] will authorize the [petitioner] to take a disciplinary action."  5 C.F.R. § 1201.140(b).  Accordingly, when the Board makes a good cause determination, it authorizes but does not require the petitioner to act.  *E.g.*, *Avery*, 120 M.S.P.R. 150, ¶¶ 13-14 (finding good cause under 5 U.S.C. § 7521 and "authoriz[ing]" the petitioner to furlough respondent ALJs); *Long*, 113 M.S.P.R. 190, ¶¶ 42, 55 (finding good cause under 5 U.S.C. § 7521 and "authoriz[ing]" the petitioner to remove the respondent ALJ); *Steverson*, 111 M.S.P.R. 649, ¶¶ 20-21 (same). Therefore, even if the respondent were correct to argue that he is an inferior officer and can only be removed by a principal officer, that may very well be what happens after the Board issues this decision.  A principal officer or other appropriate official for the petitioner may act on our good cause determination and remove the respondent.  For this reason, we cannot determine that someone other than a principal officer improperly removed the respondent.

¶38    Put another way, the complaint before us merely sought the Board's determination that good cause for removing the respondent exists.  Neither the complaint nor this decision removes the respondent because the Board's finding of good cause for removal does not bind the petitioner agency to remove the

respondent, but merely authorizes it to do so.  We thus need not opine on which petitioner agency official may exercise removal authority once the Board has found good cause for removal.  To the extent any of our prior decisions have suggested that the Board takes, or directs an employing agency to take, an action against an ALJ under 5 U.S.C. § 7521, they are overruled.

¶39 Below, the respondent also raised claims that the petitioner had (1) failed to state a claim upon which relief could be granted, (2) failed to satisfy a condition precedent to its charges, and (3) was estopped from bringing the charges.  IAF, Tab 9 at 4-5.  The presiding ALJ found that the respondent failed to prove, and in some instances even failed to support, his claims.  ID at 22-24.  The respondent also argued that the petitioner violated a criminal statute pertaining to the deprivation of an individual's rights protected by the Constitution or laws of this country.  IAF, Tab 120 at 29.  The presiding ALJ found that the Board lacks jurisdiction over this claim.  ID at 33.  The respondent does not reraise any of these particular claims on review, and we decline to consider them further.[6]

---

[6] The respondent states on review that he "testified that, in retrospect, he believes that he grossly erred in not filing a [F]ederal Whistleblower action which would have protected him from the resultant retaliation."  PFR File, Tab 11 at 18.  We find no indication that the respondent raised whistleblower retaliation as an affirmative defense below.  IAF, Tab 9 at 4-5.  The testimony cited by the respondent reflects that, after receiving the November 2014 instruction not to conduct any off-the-record discussions with medical expert witnesses, he told the Birmingham HOCALJ that it was a "disservice" not to allow the respondent to continue to do so.  HT, Nov. 5, 2019, at 47-50 (testimony of the respondent); IAF, Tab 104 at 15-17.  Regardless of the merits of any whistleblower reprisal claim, the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence.  *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016).  The respondent's attorney acknowledged in his closing statement that the respondent had elected not to raise a whistleblower reprisal claim.  HT, Nov. 7, 2019, at 87-88 (closing argument of the respondent's attorney).  The respondent was presumably aware of his own alleged disclosures prior to the hearing, and his failure to raise such a claim below does not demonstrate due diligence.  Therefore, to the extent the appellant is now attempting to raise such a claim, we decline to grant review on that basis.

<u>We find good cause for the petitioner's chosen penalty of removal.</u>

¶40    The petitioner's initial complaint sought permission to suspend the respondent for the period between the date of its complaint and our final decision, as well as to remove the respondent. IAF, Tab 1 at 4. The ALJ instead found that there was good cause to suspend the respondent for 2 years and demote him. ID at 39-48. In its petition for review, the petitioner argues that we should authorize the respondent's removal rather than the lesser penalty identified by the ALJ. PFR File, Tab 12 at 12-21 (referencing ID at 39-48). For the reasons that follow, we find good cause for the petitioner's selected penalty of removal.[7]

¶41    In original jurisdiction cases such as this one, under 5 U.S.C. § 7521, the Board looks to the factors articulated in *Douglas*, 5 M.S.P.R. at 305-06, to guide its penalty analysis. *Long*, 113 M.S.P.R. 190, ¶ 47. In *Douglas*, 5 M.S.P.R. at 305-06, the Board articulated a nonexhaustive list of factors relevant to penalty determinations. The presiding ALJ considered the *Douglas* factors in this case and found that a 2-year suspension, rather than the petitioner's chosen penalty of removal, was most appropriate. ID at 39-48. Among other things, he decided that the respondent held a position of prominence and his misconduct was serious, but mitigating factors including his length of service, prior performance, and job tensions warranted the lesser penalty. *Id.* Although we agree with portions of the ALJ's analysis, we disagree with other portions and with his final conclusion.

¶42    The Board considers first and foremost among the *Douglas* factors the seriousness of the misconduct and its relationship to the employee's position and

---

[7] The petitioner separately argued that the Board should depart from existing precedent and find that the petitioner's penalty determination is entitled to deference if we deem the respondent an inferior officer under the Appointments Clause. PFR File, Tab 12 at 21-24 (referencing *Anyel*, 58 M.S.P.R. at 274 n.23); *see Long*, 113 M.S.P.R. 190, ¶ 47 (explaining that the Board selects the appropriate penalty in an action taken under 5 U.S.C. § 7521 and does not give deference to the petitioner's preferred penalty). We need not substantively address this argument because we find the proposed removal proper, regardless of any deference to the petitioner.

duties. *Long*, 113, M.S.P.R. 190, ¶ 48. Like the presiding ALJ, we find that the respondent's offenses varied but were all serious. ID at 40-41. Despite the petitioner's extensive efforts to provide him with detailed feedback and training, the respondent repeatedly neglected his duties. *E.g.*, IAF, Tab 109 at 4-5, Tab 110 at 4-14; ID at 3-4, 10-11. He also repeatedly and defiantly failed to follow directives about multiple topics. *E.g.*, ID at 4-5, 11-16. This includes the respondent's blatant refusal to attend training, even when the petitioner had already reprimanded him for refusing to attend this training on earlier dates and despite warnings that this could lead to further discipline. *Id.* Lastly, the respondent repeatedly engaged in conduct unbecoming in ways that are disruptive and unacceptable for any professional, much less a judge. *E.g.*, ID at 5-6, 16-21; *see Social Security Administration v. Brennan*, 27 M.S.P.R. 242, 251 (1985) (recognizing that the position of ALJ is one of prominence, whose incumbents usually engender great respect and whose cooperation within the office should be taken for granted), *aff'd sub nom. Brennan v. Department of Health and Human Services*, 787 F.2d 1559 (Fed. Cir. 1986). This unbecoming conduct included the respondent calling his supervisor a "Nazi" and physically preventing her from giving him a written directive before ultimately taking the directive, only to tear it to pieces in her presence. *Id.* We have considered the respondent's arguments discussed above, some of which the ALJ considered under other *Douglas* factors, including arguments that the respondent's supervisor provoked his conduct and that the conduct occurred over a short period of time, along with his explanations for failing to follow certain directives. Nonetheless, we do not find that any of these arguments or alleged facts meaningfully lessens the severity of the respondent's offenses.

¶43     The petitioner disputes several of the ALJ's findings about other *Douglas* factors.[8] For example, the petitioner argues that it was inconsistent for the ALJ to decide that the respondent was not likely capable of rehabilitation because the respondent had shown little or no remorse, yet find that a penalty less than removal would deter the respondent in the future. PFR File, Tab 12 at 15-16. We agree.

¶44     One of the *Douglas* factors is the potential for the employee's rehabilitation. 5 M.S.P.R. at 305. The Board considers expressions of remorse as reflecting rehabilitative potential and thus militating in favor of a lesser penalty. *E.g.*, *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 22 (2014). Conversely, an individual's rationalizations and lack of remorse may reflect little rehabilitative potential and thus be aggravating factors. *Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008). Here, the respondent has expressed little or no remorse. *E.g.*, IAF, Tab 120. To illustrate, the respondent testified that his supervisor "truly was worse than a Nazi." *E.g.*, HT, Nov. 6, 2019, at 34 (testimony of the respondent). As another example, the respondent continued to characterize the petitioner's requirement that he attend training related to his performance as "a total waste of [his] time," and its requirement that he attend separate sensitivity training as so unwarranted that "it made [him] sick." *Id.* at 27, 80-81; IAF, Tab 9 at 10. We find that this lack of remorse suggests that there is very little potential for the respondent's rehabilitation if he is given a penalty less than removal.

---

[8] The petitioner also argues that returning the respondent to work after 6 years away from his ALJ duties would require retraining. PFR File, Tab 12 at 15. This argument does not implicate any of the *Douglas* factors and is not an appropriate penalty question. Rather, it concerns the scope of appropriate relief when the Board reverses an agency's action. *Cloude v. Department of the Navy*, 83 M.S.P.R. 184, ¶¶ 6-7 (1999) (finding that status quo ante relief included training that the agency had improperly denied the appellants prior to removing them). Because we are not reversing an action, we do not reach this argument.

¶45     The petitioner also argues that the ALJ erred in analyzing the respondent's past disciplinary record and past work record to find that those factors warranted a lesser penalty.  PFR File, Tab 12 at 16-19.  These are also factors that, under *Douglas*, may be relevant to a penalty determination.  5 M.S.P.R. at 305.  The petitioner asserts that the ALJ erred by indicating that the respondent had no history of discipline when the respondent had previously been reprimanded for some of the very same misconduct the ALJ sustained in this matter.  PFR File, Tab 12 at 16-17 (referencing ID at 41).  We agree.  The Board may rely on a prior reprimand as past discipline.  *See, e.g.*, *Byers v. Department of Veterans Affairs*, 89 M.S.P.R. 655, ¶¶ 14-19 (2001) (finding that a prior reprimand could be considered as past discipline in determining the penalty); *Buniff v. Department of Agriculture*, 79 M.S.P.R. 118, ¶ 10 & n.4 (1998) (considering an employee's prior reprimand in analyzing the reasonableness of a petitioner's penalty).  Here, the ALJ failed to account for a prior reprimand that was relevant to the charges now before the Board.  *Compare* IAF, Tab 108 at 7-9 (reprimanding the respondent in September 2016 for failing to follow a directive to attend sensitivity training), *with* IAF, Tab 1 at 10, 13-14 (charging the respondent with failure to follow a directive to attend the same training in October 2016), *and* ID at 15-16 (sustaining that charge).[9]

¶46     Turning to the respondent's past work record, the ALJ found that this factor supported a lesser penalty because, inter alia, the respondent's unbecoming conduct occurred over a short period of time.  ID at 42.  The petitioner disagrees.  PFR File, Tab 12 at 18-19.  We find that the amount of time between the

---

[9] Under *Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981), the Board's review of a prior disciplinary action is limited to determining whether that action is clearly erroneous, the employee was informed of the action in writing, the action is a matter of record, and the employee was permitted to dispute the charges before a higher level of authority than the one that imposed the discipline.  Here, the letter of reprimand satisfies those prerequisites, IAF, Tab 108 at 7-9, and the respondent has not shown that it was clearly erroneous.

respondent's instances of misconduct, as well as the respondent's allegations that his misconduct was instigated by his HOCALJ, are more appropriately analyzed when weighing the nature and severity of the offenses. We find that the short period of time in which the offenses occurred does not meaningfully lessen the seriousness of the respondent's misconduct.

¶47 Regarding the respondent's past work record, the petitioner argues that the ALJ mischaracterized the respondent as performing satisfactorily prior to the incidents giving rise to this action despite contrary evidence. PFR File, Tab 12 at 18. However, the petitioner has oversimplified the ALJ's findings. The presiding ALJ recognized the respondent's recent performance issues, including evidence of the same, while concluding that these issues were not necessarily reflective of his 12-year career with the petitioner. ID at 42. The petitioner has not given us a reason to conclude otherwise. On this point, though, we note that the ALJ accounted for the respondent's 12 years of service in his position when analyzing his past work record. ID at 42. But it appears to be unrebutted that the respondent began his Federal service in 1969 or 1970 and left Federal service approximately 6 years later. PFR File, Tab 11 at 5; HT, Nov. 5, 2018, at 10-13 (testimony of the respondent). He resumed Federal service in 2004, when he became an ALJ for the petitioner. HT, Nov. 5, 2018, at 25 (testimony of the respondent); IAF, Tab 1 at 6. An employee's length of service can be a mitigating factor in determining a reasonable penalty. *Douglas*, 5 M.S.P.R. at 305; *see Wentz v. U.S. Postal Service*, 91 M.S.P.R. 176, ¶ 19 (2002) (noting that the Board has disapproved of treating lengthy service as an aggravating factor), *modified on other grounds by Lewis v. Department of Veterans Affairs*, 113 M.S.P.B. 657 (2010), *overruled by Singh v. U.S. Postal Service*, 2022 MSPB 15. Such service includes all Federal civilian and military service. *Tartaglia v. Department of Veterans Affairs*, 858 F.3d 1405, 1409 (Fed. Cir. 2017). Accordingly, we have considered the entirety of the respondent's approximately 19 years of Federal service that predated the petitioner's June 2017 complaint, not

just his service in his current position, as a mitigating factor. *See Wentz*, 91 M.S.P.R. 176, ¶ 19 (treating 13 years of service as a significant mitigating factor).

¶48    The petitioner next argues that the ALJ improperly viewed the respondent's mental impairment as a mitigating factor, when the sole evidence in the record about the respondent's mental health was his own testimony indicating that he was free of any mental impairment. PFR File, Tab 12 at 19-20 (referencing ID at 47; HT, May 7, 2019, at 156-58 (testimony of the respondent)). We agree. During the hearing, the presiding ALJ described the respondent as exhibiting "unusual and sometimes disruptive behavior indicative of a mental impairment." ID at 47. However, absent a claim or evidence of a mental impairment, it was improper for the presiding ALJ to find that the respondent had such an impairment and rely on that as a mitigating factor. *See Smith v. Defense Logistics Agency*, 15 M.S.P.R. 611, 612-13 (1983) (concluding that a presiding official abused his discretion in finding that an appellant's alleged mental impairment was a basis for mitigating the penalty when the appellant failed to present evidence that her misconduct was the result of mental illness).

¶49    We recognize that the respondent worked for the petitioner for many years, most of which were seemingly successful and without incidents like those at issue in this matter. We also credit the ALJ's determination that the respondent genuinely felt mistreated during his final years of work and was experiencing other personal stressors. ID at 47. But these factors do not outweigh those that support the respondent's removal, particularly the nature of the offenses and their impact on the petitioner, as well as the respondent's lack of rehabilitative potential. *See, e.g.*, *Social Security Administration v. Carr*, 78 M.S.P.R. 313, 343 (1998) (finding good cause to authorize the removal of an ALJ where, inter alia, she lacked potential for rehabilitation), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999); *Burris*, 39 M.S.P.R. at 64-65 (finding good cause to authorize the removal of an

ALJ for a pattern of outrageous conduct that made the possibility of rehabilitation extremely unlikely).[10]

¶50 We briefly address the petitioner's request for a good cause determination for suspending the respondent for the period between the petitioner's complaint and our final decision. IAF, Tab 1 at 4. The petitioner does not pursue this request in its petition for review. PFR File, Tab 12. Nevertheless, section 7521(a) advises that a petitioner may only take an action against an ALJ after the Board determines that the petitioner has established good cause. 5 U.S.C. § 7521(a); *see, e.g.*, *Social Security Administration v. Boham*, 38 M.S.P.R. 540, 546-47 (1988) (finding that SSA proved good cause to suspend the respondent ALJ for 75 days based on his refusal to comply with reasonable orders concerning case scheduling), *aff'd per curiam*, 883 F.2d 1026 (Fed. Cir. 1989) (Table). Moreover, the Board has held that the imposition of a time-served suspension is arbitrary and cannot be sustained. *Milligan v. U.S. Postal Service*, 106 M.S.P.R. 414, ¶ 13 (2007); *see Greenstreet v. Social Security Administration*, 543 F.3d 705, 709 (Fed. Cir. 2008) ("[T]he length of a suspension is arbitrary when it is based solely on the suspended employee's 'time served' awaiting decision."). For these reasons, we find that it is not appropriate to interpret the statute as authorizing a time-served or retroactive suspension.

---

[10] The respondent has asserted that the presiding ALJ's penalty determination is a "valid and irreversible use of judicial discretion." PFR File, Tab 15 at 5-8. We disagree. The respondent has failed to articulate any persuasive reason why the Board would be bound by the ALJ's penalty analysis, particularly when we have identified several shortcomings in that penalty analysis. Nor has he articulated any persuasive reason why we would depart from our practice of reviewing a presiding ALJ's determination regarding penalty. *See, e.g.*, *Long*, 113 M.S.P.R. 190, ¶¶ 5, 47-54 (disagreeing with an ALJ's initial decision, which found good cause for a 45-day suspension, and authorizing a respondent's removal); *Steverson*, 111 M.S.P.R. 649, ¶¶ 16, 19-21 (disagreeing with an ALJ's decision to approve of just a 35-day suspension and authorizing a respondent's removal).

¶51    In sum, we find that the petitioner's choice of removal is an appropriate penalty. We find that the petitioner has not demonstrated good cause to suspend the respondent for the period between its complaint and this decision.

**The ALJ did not abuse his discretion by denying the respondent's request for dismissal as a sanction for an alleged discovery violation.**

¶52    On review, the respondent disagrees with the presiding ALJ's ruling about an alleged discovery violation and the respondent's request for dismissal of this case as a sanction. PFR File, Tab 11 at 23-25. We are not persuaded.

¶53    The Board's regulation, 5 C.F.R. § 1201.41(b), gives its administrative judges broad discretion. *Guzman v. Department of Veterans Affairs*, 114 M.S.P.R. 566, ¶ 12 (2010). Such discretion includes the authority to impose sanctions as necessary to serve the ends of justice. *Id.*; 5 C.F.R. §§ 1201.41(b)(11), 1201.43. The ALJ may impose the sanction of dismissal with prejudice if a party fails to prosecute or defend an appeal. *Leseman v. Department of the Army*, 122 M.S.P.R. 139, ¶ 6 (2015); *see* 5 C.F.R. § 1201.43(b). Such a sanction should be imposed only when a party has (1) failed to exercise basic due diligence in complying with Board orders; or (2) exhibited negligence or bad faith in its efforts to comply. *Leseman*, 122 M.S.P.R. 139, ¶ 6. Absent an abuse of discretion, the Board will not reverse an administrative judge's determination regarding sanctions. *Id.*

¶54    The Board has original jurisdiction over cases involving ALJ removals under 5 U.S.C. § 7521(a). *Long*, 113 M.S.P.R. 190, ¶ 12. In adjudicating cases within its original jurisdiction, the Board generally applies the same procedural regulations as in those falling under its appellate jurisdiction. *Special Counsel v. Department of Homeland Security*, 101 M.S.P.R. 505, ¶ 8 (2006); 5 C.F.R. § 1201.121(b)(1). Therefore, we find it appropriate to apply the same abuse of discretion standard to our review of the presiding ALJ's sanctions determination.

¶55    Below, the ALJ considered but rejected an argument the respondent made in his closing brief requesting dismissal of this case, with prejudice, as a sanction

for the petitioner's alleged failure to produce certain documents during discovery. ID at 32 (referencing IAF, Tab 116 at 31, Tab 117 at 5-24); IAF, Tab 120 at 22-24. These documents consist of several unsigned letters that discuss unnamed individuals' harassment complaints against the respondent and the petitioner's conclusion that the respondent's conduct did not meet the legal definition of harassment. IAF, Tab 116 at 31, Tab 117 at 5-24. The ALJ found that the respondent obtained these documents through other means, so the respondent was not prejudiced by this alleged discovery violation, which the ALJ described as "harmless." ID at 32. The ALJ further found that dismissal of the petitioner's complaint was "not the correct remedy for a discovery violation." *Id.*

¶56 On review, the respondent disputes the ALJ's findings. PFR File, Tab 11 at 23-25. The respondent argues that he was prejudiced because the petitioner "intentionally" kept these documents from him, and he only came into their possession after the hearing in this case had already begun. *Id.* at 23-24. The respondent also summarily asserts that dismissal of the petitioner's complaint is an appropriate sanction under the "statute." *Id.* at 25.

¶57 The respondent has presented us with little more than bare assertions about this alleged discovery violation and the propriety of dismissal as a sanction. To illustrate, the respondent's petition for review does not clearly direct us to anywhere in the voluminous record where we might find the discovery request at issue or the petitioner's alleged deficient response. In addition, although he has described the petitioner as intentionally withholding the documents, he has not provided any evidentiary support or explanation. The respondent has also failed to provide us with further details about when he obtained the documents. This is particularly noteworthy because, although the respondent vaguely described receiving them after the hearing had already begun, that hearing spanned approximately 15 months, and the respondent had approximately 6 months after the hearing ended to submit his closing brief. HTs (documenting hearing dates spanning August 2018 to November 2019); IAF, Tab 120 (the respondent's May

2020 closing brief). Lastly, the respondent has not presented a persuasive explanation about the relevance of the documents at issue or any persuasive explanation about how he was prejudiced by the delayed receipt. For all of these reasons, we find that the respondent has failed to show that the ALJ abused his discretion by considering the alleged discovery violation and finding that it did not warrant dismissal of this case or any other sanctions. *See Wagner v Department of Homeland Security*, 105 M.S.P.R. 67, ¶¶ 5-6, 13-15 (2007) (observing that sanctions should be proportionate to the offense and finding that the sanction imposed by an administrative judge for a particular discovery violation was excessive). In light of this finding, we need not address the ALJ's suggestion that dismissal is never an appropriate sanction for a discovery violation or the respondent's argument to the contrary.

## ORDER

¶58 The Board authorizes the petitioner to remove the respondent for good cause shown, pursuant to 5 U.S.C. § 7521. This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/
_____

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.